UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kristina Jean Powers,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Board of Education of Independent<br>School District #811,<br><br>　　　　　　　Defendant. | Civil No. 11-202 (MJD/AJB)<br><br><br>**REPORT & RECOMMENDATION** |

## INTRODUCTION

Plaintiff Kristina Jean Powers brings this 42 U.S.C. § 1983 action against her former employer, Defendant Board of Education of Independent School District #811 (the "District"), alleging the deprivation of her due process rights based on violations of the Minnesota Government Data Practices Act.[1]  This matter is before the Court, Chief Magistrate Judge Arthur J. Boylan, on the District's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). [Docket No. 7.]  The case has been referred to the magistrate judge for report and recommendation under 28 U.S.C. § 636. [Docket No. 13.]  A hearing was held on the motion on July 22, 2011.  Powers appeared pro se.  Marlene Garvis, Esq. and Mark Hellie, Esq. appeared on behalf of the District.  For the reasons discussed below, the magistrate judge recommends that the District's motion to dismiss be granted.

---

[1] Powers previously filed another action against Wabasha-Kellog Independent School District #811 that alleged retaliation for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, which this Court dismissed.  Powers v. Wabasha-Kellog Independent School District #811, No. 10-4678 (D. Minn. July 18, 2011) (order granting defendant's motion to dismiss and dismissing complaint with prejudice).

1

**BACKGROUND**

The Court will construe the Complaint as true and only recount relevant facts necessary to resolve this motion. Powers worked for the District's "Kids Club," then known as the "TAPS Program" until she quit her job on December 8, 2008. (Ex. 1 at 1.)[2] On February 12, 2009, the District's Superintendent, James Freihammer, filed a petition for a harassment restraining order ("HRO") against Powers in the Wabasha County District Court. (Id.) According to Freihammer, Powers sent him "dozens of emails" beginning October 2008, which indicated "an emotional attachment to him and that his job could be in jeopardy." (Id. at 4.) Freihammer also alleged that Powers "contacted [the District] regarding her fantasy that there is a relationship between her and [him]." (Id.) Such contact consisted of numerous emails from Powers to the District's school board members. (Compl. ¶ 10.) The emails were "lewd, vulgar, and explicit" and disclosed unlawful conduct by Freihammer and other employees. Powers maintains that she did not send those emails. (Id.) She claims they were sent in her name from a web-based email address that she never used. (Id.)

After the HRO was filed, Powers's then-attorney issued a third-party subpoena to the District. (Ex. 6 at 22.) It sought, among other things, "electronic copies of all emails purportedly sent by Kristina Powers to James Freihammer or to any other employee of [the District]." (Id. at 25.) The District moved to quash the subpoena, and the court heard the motion on April 28, 2009. (Id. at 18, 22.) At the hearing, the District argued that the emails purportedly from Powers to school board members were protected from disclosure under the Minnesota Government Data Practice Act ("MGDPA"). (Id. at 25-26.) The court, however, denied the motion to quash as to that portion of the subpoena. (Ex. 7.) The District then filed a motion for

---

[2]   "Ex." refers to the exhibits attached to the Affidavit of Mark K. Hellie dated May 19, 2011 [Doc. No. 10], submitted in support of the District's motion.

reconsideration. (Ex. 8.) The court heard that motion on July 24, 2009, and it rescinded its prior order from the bench on the basis of the MGDPA. (Ex. 9 at 6, 16-17.) Thus, the District ultimately did not produce the emails requested by the subpoena.

Powers claims that the District went on to use the emails against her, all the while not allowing her access to them. (Compl. ¶¶ 29-33.) For example, during the HRO proceedings, the District allowed Freihammer to use the emails against her and allowed the school board chairman to testify that she sent the emails. (Id.) Additionally, the District threatened to release the emails if she ever brought any allegations against it. (Id. ¶ 9.) It further "propagated . . . the spirit of the emails" in the local community to discredit and harass her. (Id. ¶ 38.)

Powers brings this action under 42 U.S.C. § 1983, alleging that the District "illegally acted under color of state law, namely, the [MGDPA] . . . to deny [her] the Constitutional right of due process." (Id. ¶ 8; see also id. ¶ 7.) She states that the District conducted a "civil investigation" pursuant to the MGDPA regarding the complaints about Freihammer that it received by way of the emails. (Id. ¶¶ 12, 23, 26-27.) Because the District maintained that Powers sent those emails, Powers argues that she was a "complainant" under the MGDPA. (Id. ¶ 23.) And, since the MGDPA provides that a complainant has access to her own statements, the District should have given her access to the emails on that basis. (Id.) Powers also approached the local police for help in determining who sent the emails, and she alleges that the District violated the MGDPA when it "blocked" the police's "investigative attempts." (Id. ¶¶ 18, 21.) Powers does not now seek access to the emails. Rather, she seeks redress for the District's deprivation of her due process rights through its violation of the MGDPA and its use of the emails against her.

**STANDARD OF REVIEW**

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint liberally, assuming the facts alleged therein to be true and drawing all reasonable inferences from those facts in the plaintiff's favor. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). The complaint should not be dismissed simply because the Court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein. Id. at 556. Accordingly, a well-pleaded complaint will survive a motion to dismiss even where the likelihood of recovery appears remote. Id.

While the Court must "view pro se pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law." Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The complaint must contain enough facts to state a claim for relief that is "plausible on its face," id. at 570, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Where the facts alleged do not permit the Court to infer more than the "mere possibility of misconduct," the plaintiff is not entitled to relief. Id. at 1950. "A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6)."[3] Republic Bank

---

[3] Certain of the exhibits submitted by both parties are outside the pleadings and are not matters of public record. The District's motion to dismiss need not be converted to one for summary judgment, however, because the Court has not relied on these materials in deciding the motion.

of Chi. v. Lighthouse Mgmt. Group, Inc., No. 537, 2010 WL 2539344, at *3 (D. Minn. July 16, 2010) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir.1999)).

## ANALYSIS

Powers brings this action under 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). "The first task for a court considering a § 1983 claim is to identify the specific constitutional right allegedly infringed." C.N. ex rel. J.N. v. Willmar Public Schs., No. 4774, 2008 WL 3896205, at *5 (D. Minn. Aug. 19, 2008), aff'd, 591 F.3d 624 (8th Cir. 2010).  Here, Powers alleges infringement of her constitutional due process rights, which are protected by the Fourteenth Amendment.[4]  The Fourteenth Amendment's Due Process Clause provides that no state "shall deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1.  There are two types of rights secured by this clause: procedural due process rights and substantive due process rights.  Powers does not specify which type of due process rights give rise to her claims. Thus, the Court addresses both.

---

[4] Powers does not allege the specific Constitutional provision that gives rise to her due process claim.  The Court construes her claim, however, as arising out of the Fourteenth Amendment.  Though the Fifth Amendment likewise protects an individual's due process rights, it applies only to the federal government or federal actions.  Barnes v. City of Omaha, 574 F.3d 1003, 1006 n.2 (8th Cir. 2009).  Thus, to the extent that Powers relies on the Fifth Amendment, her claim must fail.

## I. Procedural Due Process

"Procedural due process claims require a two-step analysis. Initially, a plaintiff must demonstrate that the state deprived him of some "life, liberty, or property" interest. If successful, the plaintiff must then establish that the state deprived him of that interest without sufficient 'process.'" Krentz v. Robertson, 228 F.3d 897, 902 (8th Cir. 2000). Here, Powers has not alleged facts to establish either a protected interest or insufficient process.

### A. Protected Interest

Powers relies on alleged violations of the MGDPA as the basis of her claims. See e.g., Compl. ¶¶ 7, 8, 19-23, 26, 32; Pl.'s Opp'n Mem. at 32-39. Thus, our analysis begins by determining first whether the MGDPA confers any protected liberty or property interests. A state statute will give rise to a liberty or property interest

> only where (1) it contains particularized substantive standards or criteria that guide the decisionmakers, and (2) it uses mandatory language requiring the decisionmakers to act in a certain way, thus limiting the official's discretion.

Jennings v. Lombardi, 70 F.3d 994, 996 (8th Cir. 1995) (citation omitted); see also Forrester v. Bass, 397 F.3d 1047, 1055 (8th Cir. 2005). In other words, the statute must contain "substantive predicates to govern official decisionmaking" along with "explicitly mandatory language, i.e., specific directives to the decisionmaker that if the [statute's] substantive predicates are present, a particular outcome must follow." Forrester, 397 F.3d at 1055. In determining whether a statute meets this criteria, we "examine closely the language of the [] statute[]." Ky. Dept. of Corr. v. Thompson, 490 U.S. 454, 461 (1989).

"The MGDPA provides a regulatory framework for the collection, creation, storage, maintenance, dissemination and access to the government data maintained by state agencies and political subdivisions." Shakopee Mdewakanton Sioux (Dakota) Cmty. v. Hatch, No. 1737,

6

2002 WL 1364113, at *3 (D. Minn. June 20, 2002). It "establishes a presumption that all government data are public and are accessible to the public, unless otherwise classified by statute, by temporary classification under the MGDPA, or by federal law." Id. Upon request for access to data, "[i]f the responsible authority or designee determines that the requested data is classified so as to deny the requesting person access, the responsible authority or designee shall inform the requesting person." Minn. Stat. § 13.03, subd. 3(f). Moreover, the MGDPA allows a government entity to "oppose[] discovery of government data or release of data pursuant to court order on the grounds that the data are classified as not public." Id. § 13.03, subd. 6.

      The provisions of the MGDPA just described do not contain substantive predicates or explicitly mandatory language limiting discretion. Rather, they contemplate that the responsible authority—here, the District—exercise discretion in determining the classification of requested data and opposing its discovery. Cf. Shakopee, 2002 WL 1364113, at *5 (finding that MGDPA provisions on the temporary classification of data gave responsible entities discretionary authority and, thus, did not confer a protected interest). Thus, the Court cannot find that these provisions of the MGDPA give rise to a protected interest.

      Powers specifically focuses on the provisions governing civil investigative data, arguing that they give rise to a protected interest. Under the MGDPA,

> data collected by a government entity as part of an active investigation undertaken for the purpose of the commencement or defense of a pending civil legal action, or which are retained in anticipation of a pending civil legal action, are classified as . . . confidential . . . in the case of data on individuals.

Minn. Stat. § 13.39, subd. 2. Confidential data on individuals is inaccessible to the individual subject of that data. Id. § 13.02, subd. 3. The MGDPA further provides that "[w]hether a civil legal action is pending shall be determined by the chief attorney acting for the government entity." Id. § 13.39, subd. 1. Additionally, civil investigative data becomes inactive upon the

7

occurrence of, among other things, "a decision by the government entity or by the chief attorney acting for the government entity not to pursue the civil action." Id. § 13.39, subd. 3. "Data determined to be inactive . . . may become active if the government entity or its attorney decides to review the civil action." Id. Moreover, inactive civil investigative data becomes public unless the government entity determines that the data would, if released, jeopardize another pending civil legal action. Id.

The provisions governing civil investigative data just described do not contain substantive predicates or explicitly mandatory language limiting discretion. Significantly, there is no substantive language governing the discretion by the District in determining whether a civil legal action is pending in the first place so as to trigger the classification of the data as confidential. Nor is there any language governing the District's discretion in determining whether release of the data, once inactive, would jeopardize another pending civil legal action.

Powers claims that the civil investigative data provisions do, in fact, contain substantive predicates and explicitly mandatory language. She points to the provision stating that, despite the confidential classification of civil investigative data, "[a] complainant has access to a statement provided by a complainant to a government entity."[5] Id. § 13.39, subd. 2(b). Powers claims that this provision gave her the "right to immediately have access to these statements made in her name." (Pl.'s Opp'n Mem. at 33.) This argument misses the mark. It ignores the provisions described above that grant discretionary authority to the District in determining

---

[5] A similar provision is found in Minn. Stat. § 13.43, subd. 2(d), as cited by Powers. That provision is found in the section of the MGDPA governing personnel data. Similar to the section on civil investigative data, this section contemplates discretion by the responsible government entity and, thus, cannot be said to confer a protected interest. See, e.g., Minn. Stat. § 13.43, subd. 2(e) (government entity may decide that disclosure may jeopardize an active investigation or reveal confidential sources and, thus, may prevent disclosure). Further, notwithstanding Minn. Stat. § 13.43, subd. 2(d), the government entity has discretion under Minn. Stat. § 13.03 to oppose discovery of data.

whether a civil legal action is pending in the first place. Only after that determination is made are the remaining provisions governing civil investigative data triggered. And, notwithstanding a confidential classification, the District retains discretion in opposing discovery of data. See Minn. Stat. § 13.03, subd. 6. Indeed, the District exercised that discretion by bringing the motion to quash Powers's subpoena. Given the District's discretion, the Court cannot find that the civil investigative data provisions give rise to any protected interest.

Powers identifies two other sections of the MGDPA in her Complaint, but neither give rise to a protected interest. First, she appears to rely on the provisions governing the process when data is not accurate or complete. Under Minn. Stat. § 13.04, subdivision 4, upon request by an individual subject of data, the responsible authority shall correct data that is found inaccurate and incomplete. The provision also describes how such decisions may be appealed. Because this provision gives the District discretion in deciding whether data is inaccurate or incomplete, it cannot give rise to a protected interest. Second, Powers appears to argue that the District's alleged violation of the provision governing dissemination of data to law enforcement gives rise to a protected interest. Under Minn. Stat. § 13.43, subdivision 15, certain private or confidential data "may be disseminated to a law enforcement agency" under the circumstances described therein. Again, this provision grants discretion to the District, as evident by the use of the word "may." Thus, it cannot form the basis of a protected interest.

Finally, in addition to relying on alleged violations of the MGDPA, Powers argues that she "suffered the liberty interest loss of her intended career choice as a teacher in special education, as Defendant's actions against Plaintiff would preclude her from ever seeking employment within another School District." (Pl.'s Opp'n Mem. at 36.) She also argues that she "suffered the property interest of her right to a cause of action" against the District over possible

9

federal employment law violations (id. at 37) and against the person who impersonated her in the emails (id. at 39). These claims are not plausible on their face—the Complaint contains no facts that would permit the Court to reasonably infer that the District foreclosed Powers from seeking other employment opportunities or pursuing a cause of action against the District or any person for any claims she might have. In any event, there is no constitutional right to an "intended career choice." And, Powers is free to pursue legal action for any claims she believes she has—indeed, she exercised that freedom by bringing this case.

For the reasons set forth above, the Court cannot find that Powers has sufficiently alleged a protected interest. Thus, her Complaint must fail.

### B. Adequate Process

Even assuming *arguendo* that Powers has alleged a protected interest, her due process claim must still fail as a matter of law because she cannot allege insufficient process. "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 309, 313 (1950)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

Here, the MGDPA contains adequate procedures for challenging denials of access to data. For example, when a governmental entity opposes disclosure of requested data, it must give the requesting party notice. Minn. Stat. § 13.03, subd. 3(f). The requesting party may then bring an action to compel discovery "before the appropriate presiding judicial officer, arbitrator, or administrative law judge." Id. § 13.03, subd. 6. The MGDPA goes on to describe the issues that the presiding officer should consider in determining whether the requesting party should have access. See id. Moreover, the MGDPA authorizes civil remedies, administrative remedies,

and criminal penalties for violations, and describes the procedure for pursuing each. See id. §§ 13.08, 13.085, 13.09. And, as previously discussed, it provides a procedure when data is not accurate or complete, including an appeals procedure. See id. § 13.04, subd. 4.

Powers has not alleged facts showing that she was denied the procedures available to her under the MGDPA. To the contrary, she admits that she "exercised her right under Minn. Stat. § 13.04, [s]ubd. 4, regarding the procedure when data is not accurate." (Compl. ¶ 20.) She could have further pursued her matter by bringing an action in court for civil or administrative remedies or to compel discovery, but she did not. See Shakopee, 2002 WL 1364113, at *6 (MGDPA provision authorizing action in state district court was sufficient process). Simply put, there are no facts to suggest that the District denied Powers any of the procedures available to her under the MGDPA. Moreover, Powers received sufficient notice and opportunity to be heard. She subpoenaed the emails, the District then brought a motion to quash the subpoena, and the Wabasha County District Court ultimately held two motion hearings wherein she was represented by counsel.[6] Id. ("The 'ordinary judicial process' of a state court action also may constitute sufficient procedure consistent with due process.") In sum, the Court cannot reasonably infer that Powers did not receive all of the process she was due.

## II.   Substantive Due Process

As with a procedural due process claim, the possession of a constitutionally protected interest is a condition precedent to a substantive due process claim. Mulvenon v. Greenwood,

---

[6] The District argues that these proceedings before the Wabasha County District Court constituted the hearing allowed under Minn. Stat. § 13.03, subd. 6. (Def.'s Reply Mem. at 9.) But, as previously described, that section provides that a requesting party may bring an action to compel discovery "before the appropriate presiding judicial officer." Powers did not bring an action to compel discover. Rather, the District brought a motion to quash her subpoena, which she opposed. Ultimately, however, Powers was afforded sufficient opportunity to be heard even though such hearings may not have fallen within Minn. Stat. § 13.03, subd. 6.

643 F.3d 653, 658 (8th Cir. 2011) (internal quotations omitted).  Moreover, "the theory of substantive due process is properly reserved for truly egregious and extraordinary cases."  Myers v. Scott Cnty., 868 F.2d 1017, 1018 (8th Cir. 1989).  Powers must show that the District "used [its] power in such an arbitrary and oppressive way that it 'shocks the conscience.'"  Entergy, Ark., Inc. v. Nebraska, 241 F.3d 979, 991 (8th Cir. 2001) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998)).  As explained above, Powers has failed to allege a constitutionally protected interest.  Additionally, she has not alleged facts sufficient for the Court to reasonably infer that the District's conduct was "truly egregious and extraordinary" or "shocked the conscience."  Thus, the Court should dismiss her substantive due process claim.

## RECOMMENDATION

For the reasons set forth above, Powers fails to adequately plead a violation of due process rights and her claim must fail as a matter of law.  Accordingly, this Court **RECOMMENDS** that the District's motion to dismiss [Docket No. 7] be **GRANTED** and that the complaint in this matter be **DISMISSED** with prejudice.

Dated: August 15, 2011                             s/ Arthur J. Boylan
                                                   Chief Magistrate Judge Arthur J. Boylan
                                                   United States District Court

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before August 31, 2011.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within fourteen days of receipt of the Report.